**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **OSCAR GARCIA, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**PERFECTION AUTO BODY SERVICES, INC., and DAVID MANDEL, Jointly and Severally,**<br><br>**Defendants.** | **COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Oscar García ("García" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff is a former detail employee at Defendants' auto body detail and general automotive services and repair shop located in Port Washington, New York. While working for Defendants, Plaintiff typically worked well in excess of forty (40) hours per week performing non-exempt work, yet was paid on a salary basis with no overtime premiums for hours worked over 40 in a given workweek. In addition, at the beginning of the relevant time period, because of the large

1

number of hours worked by Plaintiff each week, the salary that Plaintiff received also did not compensate him at the applicable minimum wage for all hours worked. Plaintiff also never received spread-of-hours premiums when working shifts in excess of ten (10) hours and did not receive wage notices or wage statements, as required by the NYLL.

2. Plaintiff brings this action to recover overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims for failure to pay minimum wages for all hours worked, spread-of-hour premium pay for days in which he worked a shift of ten (10) or more hours pursuant to NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder, and failure to provide wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3. Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216 (b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' principal place of business is located in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

# THE PARTIES

**Plaintiff:**

7. Plaintiff Garcia was, at all relevant times, an adult individual residing in Queens County, New York.

8. During the relevant time period, Plaintiff performed work for Defendants at their auto body and general automotive services and repair shop located at 99 Harbor Rd., Port Washington, New York 11050.

9. Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

10. Upon information and belief, Perfection Auto Services, Inc. ("Perfection Auto Services" or the "Corporate Defendant") is an active New York Corporation with its principal place of business located at 27-05 Utopia Parkway, Flushing, New York 11358.

11. Upon information and belief, Defendant David Mandel ("Mandel" or the "Individual Defendant" and, collectively with the Corporate Defendant, the "Defendants") is an owner or operator of the Corporate Defendant who sets the Corporate Defendant's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Mandel was in charge of determining the Corporate Defendant's policies with respect to payroll, and otherwise running the business of the Corporate Defendant.

12. The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in his direction and control of Plaintiff and the Corporate Defendant's other similarly situated employees, and is an "employer" pursuant to the FLSA, 29

U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

13. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

14. At all relevant times, Plaintiff and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

15. Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

16. At all relevant times, the Corporate Defendant has used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

## **DEMAND FOR PAYMENT OF WAGES**

17. On August 18, 2016, Plaintiff, through his counsel, issued a letter demand for payment of back wages to Defendants Mandel and Perfection Auto Services, Inc.

18. The letter was received by the Defendants on August 19, 2016.

19. Defendants, through their counsel, Scott Green, Esq., engaged in discussions with Plaintiff's counsel regarding the facts and merits of the claims and the possibility of reaching an amicable resolution to avoid protracted litigation.

20. The parties were unable to reach a resolution, which resulted in the commencement of the instant action.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21. Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since February 22, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees (the "Collective Action Members").

22. A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

23. Plaintiff and the Collective Action Members have substantially similar job duties, and are paid pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

**Defendants' Auto Body Business**

24. At all relevant times, Defendants have been in the auto body and general automotive technical and repair business.

25. Upon information and belief, Defendants opened Perfection Auto Services Inc., in or around 2007.

26. Upon information and belief, Defendant Mandel owns, operates and manages Perfection Auto Services, located at 99 Harbor Rd., Port Washington, New York.

27. Defendant Mandel is a constant presence at Perfection Auto Services, where he paid Plaintiff on a weekly basis, oversaw the business, set payroll policies, and ensured that the

company was operated in accordance with his policies.

**Plaintiff's Work for Defendants**

28. <u>Plaintiff Garcia</u> was employed by Defendants as a detail employee from in or around 2010 to in or around July 2016 (the "Garcia Employment Period").

29. As a detail employee, Plaintiff Garcia's duties included cleaning, correcting, and protecting the paint surface of a car with proper washing and drying, along with polishing and waxing the exterior of the car; buffing or patching small dents or minor scratches on the exterior of the cars; washing and dressing with a protectant and other chemicals, the chassis, wheels, and undercarriage of a car; interior car detailing consisting of vacuuming, shampooing and cleaning interior carpeting and seat surfaces, and also conditioning and cleaning leather inside the car; among many other responsibilities related with the detailing and auto body repair business.

30. Throughout the Garcia Employment Period, Garcia typically worked six (6) days per week. Throughout the majority of the Garcia Employment Period, Mondays through Fridays, Garcia typically worked from approximately 7:30 am to approximately 6:30 pm, and on Saturdays from approximately 7:00 am to approximately 1:00 pm, with Sundays off. During the last year of his employment at Defendants' establishment, from in or around 2015 to in or around July 2016, Plaintiff Garcia was assigned to work six (6) days per week with a different schedule: Mondays to Fridays, from approximately 7:00 am to approximately 6:00 pm, Saturdays from approximately 7:00 am to approximately 1:00 pm, and with Sundays off.

31. During the first two (2) years of his employment, from in or around 2010 to in or around 2012, Plaintiff Garcia was typically allowed to take a fifteen (15) minute break during the day, depending on how busy the auto body shop was that day. For the rest of his employment

period, Plaintiff Garcia was allowed to take a fifteen (15) minute break in the morning and a thirty minute (30) break for lunch.

32. During the first two (2) years of his employment, from in or around 2010 to in or around 2012, Plaintiff Garcia was paid a salary of three hundred sixty dollars ($360.00) per week, regardless how many hours we worked during a given workweek. During this period, because Plaintiff was working approximately sixty-one (61) hours per week, Plaintiff's salary did not compensate him at minimum wage for all hours worked.

33. From in or around 2012 to in or around 2013, Plaintiff Garcia was paid a salary of four hundred dollars ($400.00) per week. During this period, because Plaintiff was working approximately sixty-one (61) hours per week, Plaintiff's salary did not compensate him at minimum wage for all hours worked.

34. From in or around 2014 to in or around 2015, Plaintiff Garcia was paid a salary of five hundred fifty dollars ($550.00) per week. Toward the end of his employment period, from in or around 2015 to in or around July 2016, Plaintiff Garcia was paid a salary of six hundred dollars ($600.00) per week. Plaintiff Garcia was paid the aforementioned fixed salary for all hours worked, including hours worked over forty (40) per week.

35. Throughout the Garcia Employment Period, Garcia did not receive overtime premiums for hours worked over forty (40) in a given workweek.

36. At no time during the Garcia Employment Period did Plaintiff receive spread-of-hours premiums for days worked in excess of ten (10) hours per day even though he typically worked shifts in excess of ten (10) hours.

37. Garcia was paid in cash by Defendant Mandel and/or his secretary, which he received directly in his hands without an envelope or any breakdown of the wages he received.

7

38. Defendants did not provide Garcia with any means for tracking his hours worked throughout his employment period. At the end of his employment, in or around the end of 2015, Defendants installed a retina scanner to track hours worked by the employees at Defendants' establishment. However, Plaintiff and Defendants' other employees often missed their punch-in or punch-out on the machine.

39. At no time during Garcia's employment did he receive wage statements with his payment of wages that showed his hourly rate, overtime rate and total number of hours worked for the pay period.

40. At no point during Garcia's employment did he receive a wage notice showing his hourly or overtime rate or any other document detailing the manner in which he was paid.

**Defendants' Unlawful Corporate Policies**.

41. Throughout the relevant time period, upon information and belief, Defendants have employed other hourly employees who similarly worked in excess of forty (40) hours per week during the Collective Action Period and were similarly not paid overtime premiums for hours worked over forty (40). Defendants' failure to Plaintiff and Collective Action Members overtime compensation of one and one-half times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their hourly employees throughout the relevant period.

42. Defendants did not provide Plaintiff with a proper wage notice at the time of hire or by February 1 of each year or wage statements with each payment of wages.

43. Plaintiff and the Collective Action Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay overtime premiums.

44. Throughout the Collective Action Period and, upon information and belief,

continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require little skill and no capital investment. Upon information and belief, such individuals were not paid time and one-half when working in excess of forty (40) hours per week. Additionally, such individuals were not provided spread of hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements with their weekly wage payments nor proper wage notices at hiring, by February 1 of each year, or on a weekly basis.

45. Upon information and belief, throughout the Collective Action Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

46. Garcia is aware, based on conversations with the other mechanic helpers, that Defendants' payment of straight-time rates for all hours worked, failure to pay overtime, failure to pay spread-of-hours premiums and failure to provide wage notices and wage statements were corporate practices that applied to all of Defendants' hourly employees.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
(Brought on Behalf of Plaintiff and the Collective Action Members)

47. Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

48. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

49. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

50. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Opt-In Plaintiffs)**

51. Plaintiff, on behalf of himself and the opt-in plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

52. Defendants willfully violated Plaintiff's rights by failing to pay minimum wage for all hours worked in violation of the NYLL and regulations promulgated thereunder.

53. Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the opt-in plaintiffs to suffer loss of wages and interest thereon. By failing to pay Plaintiff and the opt-in plaintiffs the required minimum wage, Plaintiff and the opt-in plaintiffs are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Opt-In Plaintiffs)**

54. Plaintiff, on behalf of himself and the opt-in plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

55. Defendants willfully violated Plaintiff's and opt-in plaintiff's rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

56. Defendants' failure to pay overtime premium compensation caused Plaintiff and opt-in plaintiffs to suffer loss of wages and interest thereon. Plaintiff and opt-in plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
(Brought on Behalf of Plaintiff and the Opt-In Plaintiffs)

57. Plaintiff, on behalf of himself and the opt-in plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

58. Defendants willfully violated Plaintiff and opt-in plaintiff's rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Plaintiff and opt-in plaintiffs worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

59. Defendants' failure to pay spread-of-hours compensation caused Plaintiff and opt-in plaintiffs to suffer loss of wages and interest thereon. Plaintiff and opt-in plaintiffs are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

# FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE
**(Brought on Behalf of Plaintiff and Opt-In Plaintiffs)**

60. Plaintiff, on behalf of himself and opt-in plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

61. Defendants have willfully failed to supply Plaintiff and opt-in plaintiffs notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and Class Members as their primary language, containing Plaintiff's and opt-in plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

62. Due to Defendants' violations of the NYLL, Plaintiff and opt-in plaintiffs are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT
### (Brought on Behalf of Plaintiff and Opt-In Plaintiffs)

63. Plaintiff, on behalf of himself and opt-in plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

64. Defendants have willfully failed to supply Plaintiff and opt-in plaintiffs with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

65. Due to Defendants' violations of the NYLL, Plaintiff and opt-in plaintiffs are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the

pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b. An order tolling the statute of limitations;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f. An award of compensatory damages as a result of Defendants' failure to pay minimum wage compensation pursuant to the NYLL and supporting regulations;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h. An award of compensatory damages as a result of Defendants' failure to pay spread-of-hours premiums pursuant to NYLL and supporting regulations;

i. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay spread-of-hours premiums pursuant to the NYLL and supporting regulations;

j. Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b.

k. One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

l. An award of prejudgment and post-judgment interest;

m. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
February 22, 2017

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
Pelton@PeltonGraham.com
Taylor B. Graham (TG 9607)
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the putative FLSA Collective and Class*

# CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Perfection Auto Body y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____  
Firma

Oscar Gorcla  
Nombre Escrito